# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

WAYNE E. AIKEN,

        Plaintiff,

v.                                                                               No. CIV 99-320 BB/RLP

RIO ARRIBA BOARD OF COUNTY
COMMISSIONERS, ALFREDO
MONTOYA, MOISES MORALES, and
LORENZO J. VALDEZ, in their individual
and official capacities,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of three separate motions for summary judgment filed by Defendants (Docs. 37, 46, and 50). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the first motion for summary judgment should be granted in part and denied in part, and the latter two motions should be denied.

This is a civil rights lawsuit arising out of the termination of Plaintiff's employment by Defendants. Plaintiff claims he was fired, in violation of the First Amendment, due to his political affiliation and associations, as well as his exercise of the right to free speech. Defendants maintain they had an absolute right to terminate Plaintiff's employment on the basis of his political affiliation, and argue his right to free speech was not violated by their actions.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motions for summary judgment in light of these standards.

**Free Speech Claims**

When a public employee such as Plaintiff alleges an adverse employment action has been taken because of the employee's exercise of the right to free speech, a four-part test, called the *Pickering* test, is applicable. *See Barker v. City of Del City*, 215 F.3d 1134, 1138-39 (10th Cir. 2000) (discussing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). This test's four parts are: (1) whether the speech in question involves a matter of public concern; (2) if so, whether the employee's interest in free expression outweighs the government employer's interest in regulating the speech of its employees, in order to carry on an efficient and effective workplace; (3) whether the speech was a substantial factor driving the challenged governmental action; and (4) if so, whether the employer would have taken the same employment action against the employee even in the absence of the protected speech. *See id.* The first two questions are questions of law for the Court to answer, while the latter two are questions of fact for the jury. *See id.* Defendants have filed motions for summary

judgment concerning the first, second, and fourth factors, arguing there are no material facts in dispute as to these factors. In addition, Defendants Valdez, Montoya, and Morales request qualified immunity, arguing the law was not clearly established that an employee in a policy-making position was entitled to the same free-speech protections as a non-policy-making employee.

As to the first factor, Defendants maintain Plaintiff's speech did not involve a matter of public concern, because it was motivated purely by Plaintiff's self-interest and his desire to air grievances of a purely personal nature. In the Court's view, this is an example of a motion that should not have been brought, as it is a waste of the Court's and the parties' time. There are clearly genuine issues of fact to be resolved regarding Plaintiff's reasons for speaking out. The examples of Plaintiff's speech, which allegedly resulted in his termination, included his statements to a reporter concerning cronyism and favoritism being rampant in the Rio Arriba County government system. One of Plaintiff's accusations arose out of an incident in which a high-level county employee, driving a county vehicle even though he had no driver's license, was involved in an accident. The employee attempted to cover up the accident. When his actions were discovered, he was not fired or suspended; instead, he was "forced" to repay the damage he had caused, through payroll deductions, without having to pay interest. When asked about this incident by a reporter, Plaintiff stated he was not commenting as a county employee; but as a taxpayer, he criticized the lenient treatment received by the employee, and compared the current county government authorities to a prior regime, controlled by Emilio Naranjo, which had a reputation for cronyism. This speech, as well as other examples of statements made by Plaintiff and his wife that were critical of the management of the County, clearly concerned a topic of public concern. *See, e.g., Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224-25 (10th Cir. 2000) (when speech focuses on disclosing a public official's malfeasance

or wrongdoing, it is most likely a matter of public concern). Contrary to Defendants' arguments, a clear factual dispute exists as to whether Plaintiff was motivated solely by self-interest in speaking out, or had broader goals in mind, especially considering the evidence that he did not initiate the conversation with the reporter, but merely responded to the reporter's inquiry. Therefore, Defendants' second motion for summary judgment will be denied.

Defendants' third motion for summary judgment focuses on the second and fourth *Pickering* factors. Defendants argue that, as a matter of law, the County's interests in maintaining an efficient workplace outweighed Plaintiff's interests in speaking out. Defendants also argue, as a matter of law, the County would have terminated Plaintiff even in the absence of his protected speech. Again, this is an example of a motion that should not have been pursued. There are obvious factual disputes concerning the question of whether Plaintiff would have been terminated but for his speech. As Plaintiff points out, he was terminated within a week of his statements concerning favoritism and cronyism in County government. This short time span alone creates an inference of retaliation. *Cf. Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 597 (10th Cir. 1994) (layoffs occurring less than two months after protected activity have been held sufficiently probative of retaliatory motive to withstand summary judgment). Furthermore, as Plaintiff also points out, Defendant Valdez testified in his deposition that Plaintiff's statements to the newspaper were the "last straw" that led to his termination. Finally, there is evidence (albeit in the form of self-serving statements by Plaintiff himself) contradicting Defendants' claim that Plaintiff's job performance was deficient. Again, a clear factual dispute exists here, as to whether Plaintiff would have been fired had he not spoken out about the problems he perceived with the County's governing authorities.

There is also a straightforward factual dispute concerning the balancing test. Public employees have a strong interest in free expression concerning favoritism or other examples of governmental systems that are discriminatory, unless the employee's statements are false or clear exaggerations designed to stir up trouble. Conversely, a government entity can have little legitimate interest in stifling true, accurate accusations concerning cronyism, favoritism, or or other forms of misconduct. In order to properly conduct the *Pickering* balancing test, therefore, the Court would have to determine whether Plaintiff's accusations are true, a decision impossible to make at this point, given the conflicting evidence submitted at this summary-judgment stage. In addition, even if the accusations are true, there is a genuine issue of fact as to whether Plaintiff's accusations should have been made first privately, rather than aired in public in a conversation with a newspaper reporter. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (employee's speech will not be considered in a vacuum; court must examine manner, time, and place of employee's expression, as well as context in which dispute arose). A balancing test such as the *Pickering* test can rarely be applied as a matter of law, and this is not a proper case for such action.[1] This motion will be denied.

**Qualified Immunity:** As to the qualified-immunity issue, Defendants have raised a true question meriting the Court's attention. Defendants maintain they are entitled to qualified immunity because Plaintiff was employed in a policymaking or confidential position, and no Tenth Circuit case

---

[1]The Court acknowledges Defendants' submission of supplemental authority indicating that in applying the *Pickering* test, the fact that an employee is a policymaking employee is quite significant and bears considerable attention. However, even a policymaking employee is not required to keep quiet if, as Plaintiff has alleged, he is witnessing acts of favoritism and cronyism. The *Pickering* balancing test requires an analysis of the seriousness of the misconduct alleged by the employee, with the potential for disruption caused by the employee's choice of means to expose the misconduct, as well as the availability of alternative ways to address the problem. In this case, insufficient evidence has been presented to allow the Court to make this determination as a matter of law.

in 1997 had established that such an employee was entitled to the protections of the *Pickering* balancing test. Instead, Defendants argue, in 1997 it appeared that the *Elrod/Branti* exceptions to the *Pickering* test were applicable to free-speech as well as political-affiliation cases, and a reasonable public official would have assumed there was an absolute right to fire Plaintiff, even in response to speech that would otherwise have been protected under the First Amendment. *See, e.g., Barker*, 215 F.3d at 1137-39 (discussing *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), and their applicability to political-affiliation and free-speech cases).

The first issue to resolve is whether, as a matter of law, Plaintiff held a position that, under the *Elrod/Branti* line of cases, would be considered a confidential or policymaking position. Such positions are subject to much less protection than other positions in government employment. They are positions for which party affiliation may be considered an appropriate requirement for the effective performance of the position. Accordingly, these positions are such that an employee occupying one of them may be terminated simply for belonging to the wrong political party, or the wrong sub-group within a particular political party. *See Barker*, 215 F.3d at 1138; *Jantzen v. Hawkins*, 188 F.3d 1247, 1253 (10th Cir. 1999). If Plaintiff did not hold such a position, or if there are genuine issues of fact as to whether he held such a position, Defendants' request for qualified immunity cannot be granted, at least at this point.[2] Defendants point to the following undisputed facts in an effort to establish that Plaintiff holds a policymaking position[3]: (1) Plaintiff was the eighth-

---

[2] Defendants argue the issue of whether a public employee occupies a policy-making position is a question of law for the Court, rather than a question of fact. This assertion is contrary to current Tenth Circuit law. *See Barker*, 215 F.3d at 1138.

[3] Throughout the rest of this opinion, the Court will use the term "policymaking" as a shorthand means of referring to a position subject to the exceptions established in the *Elrod/Branti* line of cases.

highest-paid out of 240 County employees; (2) Plaintiff's position was exempt from the protections of the County's personnel policies and procedures; (3) Plaintiff's job description is vague and open-ended; (4) Plaintiff represented the County at meetings concerning E-911, a cooperative effort between various governmental entities; (5) Plaintiff acted as spokesperson for the County concerning other matters; (6) Plaintiff's position, as director of Special Projects for the County, required him to interact directly with the County Commission and to keep them as well as Defendant Valdez, the County Manager, informed concerning various projects; (7) Plaintiff's position involved some level of contact with the State Legislature, regarding legislative bills of interest to Rio Arriba County. In response, Plaintiff maintains that the extent of his lobbying activities is in dispute; that there is evidence he merely communicated the County Commissioners' positions when he acted as spokesperson for the county; and that his job description, while "perhaps not as succinct as it could be," does not convey broad authority to Plaintiff.

In spite of Plaintiff's protests the undisputed facts establish Plaintiff held a policymaking position with the County. First, the County has created a presumption that the position of Special Projects Director is a policymaking position, by making the position exempt rather than classified. This legislative decision is entitled to great weight. *Cf. Salazar v. Rio Arriba County*, 1996 WL 134913 (10th Cir. 1996) (Tenth Circuit states that where public employer has recognized political affiliation is not an appropriate job requirement, by classifying the position and making the employee subject to dismissal only for cause, it can be inferred the position is exempt from political patronage dismissal); *see also Cope v. Heltsley*, 128 F.3d 452, 459-60 (6th Cir. 1997) (if one believes in representative government, the "appropriate job requirement" exception applicable to policymaking positions must be construed broadly where the legislature has chosen not to accord civil service

7

protection to a particular position). Second, Plaintiff occupied one of the highest positions in the County government hierarchy, as evidenced by the fact he was the eighth-highest-paid employee. Third, although Plaintiff's exact role as a spokesperson for the County is disputed, it is not disputed that he appeared at meetings and spoke as a representative of the County. The fact that he may have been merely parroting the County Commission's positions does not matter; in fact, that would be expected of a policymaking employee, who is required to demonstrate loyalty to the governing body's policies and politics. Fourth, Plaintiff's job description is vague and open-ended. Finally, it is also undisputed that Plaintiff reported to the County Commissioners, and was expected to keep them directly informed of the various projects he was supposed to be working on.

All of the foregoing have been found significant factors in favor of finding that an employee is a policymaking employee. *See, e.g., Barker; McEvoy v. Spencer*, 124 F.3d 92, 104 (2d Cir. 1997) (factors for determining whether position is policymaking position include whether employee is exempt from civil service protection, is authorized to speak in the name of the policymakers, influences government programs, has contact with elected officials, and is responsive to partisan political leaders); *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 995 (9th Cir. 1999) (in deciding whether person occupies a policymaking position, court considers whether individual has vague or broad responsibilities, as well as the person's relative pay, authority to speak in the name of policymakers, and other factors). The only factual disputes Plaintiff has raised concern the amount of discretion he actually had in creating County policy, and the extent of his authority over the special projects. These disputes, however, are irrelevant to his status as a policymaking employee. *See, e.g., Barker*, 215 F.3d at 1138 (administrative assistant, who has no independent authority but instead is required to strictly toe the boss's political line, is still a policymaking employee). Given the

undisputed facts noted above, the Court finds there is no genuine issue of fact as to whether Plaintiff held a policymaking position under *Elrod/Branti*.

The next question to be answered for qualified-immunity purposes is whether the law was clearly established, in 1997, that a policymaking employee's free-speech protections were different than, and greater than, his political-affiliation protections.  It was not until *Barker* was decided, in June of this year, that the Tenth Circuit explicitly held that the *Elrod/Branti* exceptions apply to a policymaker's political affiliations, but that the *Pickering* balancing test should be applied to a policymaker's speech.  It is therefore necessary to examine the state of the law prior to *Barker*, regarding a possible policymakers' exception to the *Pickering* free-speech doctrine.  In 1993, the Seventh Circuit held that the policymaker exception applies to situations in which a policymaker declares his candidacy for his superior's job, and attacks his superior's performance in the press.  *See Wilbur v. Mahan,* 3 F.3d 214, 218-19 (7th Cir. 1993).  In doing so, the Seventh Circuit reasoned that it would not be logical to afford more protection to a disloyal policymaking employee who speaks out against his supervisor, than to one who merely belongs to a different political faction.  Thus, the Seventh Circuit appeared to equate speech with political patronage for purposes of the *Elrod/Branti* exception.  Later, in October 1997, shortly after the events at issue in this case, the Ninth Circuit held that the policymaking exception applies to all First Amendment claims, not just political-affiliation cases.  *See Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1332 (9th Cir. 1997) (holding, with no discussion, that a policymaker's free speech claim is subject to the *Elrod/Branti* exception, rather than the *Pickering* balancing test).  Finally, in August 1997, just before Plaintiff was fired, the Second Circuit, while holding that the *Pickering* test, not the policymaker exception, applies to free-

speech claims of a policymaking employee, also held that "the lack of a policymaker exception to Pickering" was not clearly established as of May 1996.  *See McEvoy*, 124 F.3d at 103.

The different results reached in the above cases, decided around the same time Defendants fired Plaintiff or a few years before that action, indicate the law was in disarray at the time Defendants acted.  If the Circuit courts could not agree as to whether the policymaker exception applied to all First Amendment claims or only certain types of such claims, Defendants could certainly not be expected to know the extent of the exception.  *Cf. Seamons v. Snow,* 84 F.3d 1226, 1238 (10th Cir. 1996) (law is clearly established only if there is Supreme Court or Tenth Circuit authority on point, or established weight of authority from other circuits is in favor of the plaintiff's position).

In accordance with the foregoing, summary judgment will be granted on the qualified-immunity issue, as to Defendants' individual liability for the claimed violation of Plaintiff's free-speech rights.  Summary judgment will be denied as to the other issues raised regarding those claims.

**Political Affiliation/Political Loyalty Claims**

Plaintiff maintains he was terminated for three different political acts:  refusing to solicit signatures for a petition drive being spearheaded by Defendant Montoya; running for Democratic precinct chair against Defendant Montoya; and declaring his candidacy for a position on the County Commission.  Plaintiff claims these acts were contrary to the aims of the political faction in power in Rio Arriba County, and that Defendants Montoya, Morales, and Valdez were part of this political faction.  Defendants, on the other hand, maintain Plaintiff was in a policymaking position and therefore had no protection for any of his political actions.  As discussed above, there is no genuine issue of fact as to whether Plaintiff was in a position subject to the *Elrod/Branti* policymaker

exception.  The Court therefore need examine only the scope of that exception as applied to the particular acts Plaintiff claims were protected by the First Amendment.

The policymaker exception is easy to apply at the extremes.  *See McEvoy*, 124 F.3d at 99, fn. 4.  Where a new administration takes office and discharges high-level, policymaking employees who belonged to the prior administration, the exception applies and those employees have no First Amendment claim.  *See id.*  On the other hand, if a clerical worker from the prior administration were to be fired for belonging to the wrong political party or faction, the exception would not be applicable and the worker would have a valid constitutional claim.  *See id.*  Where courts have had difficulty, as the *McEvoy* footnote explains, is where some type of expressive act, or refusal to act, is the basis for an adverse employment action.  For example, where an employee has campaigned for the opponent of a candidate who wins, takes office, and then fires the employee, courts have not been certain whether the policymaker exception applies automatically or whether the *Pickering* balancing test must be applied.  *See id.*  Similarly, where an employee decides to become a candidate for his superior's elective position, the court decisions have not been clear as to the correct analysis to apply. *See, e.g., Jantzen*, 188 F.3d 1252, 1257 (holding that candidacy for office, standing alone, is not an act of political affiliation; also holding, however, that it is an act of speech relating to a matter of public concern, and applying the *Pickering* balancing test); *Wilbur*, 3 F.3d at 217-18  (noting that candidacy for superior's office is not political patronage issue, but speech issue; holding, nevertheless, that employee who becomes candidate for superior's office may be dismissed even without a showing that candidacy will disrupt the operations of the agency, by analogizing to policymaker exception).

It is apparent, after review of the case law, that Defendants' categorical assertion that a policymaker may be discharged at will for any type of political activity or affiliation is not correct.

Instead, in the Tenth Circuit, the *Pickering* balancing test may be the appropriate analysis, depending on the particular type of affiliation or activity that is involved. *See Jantzen*. For example, when some type of speech is involved, the *Pickering* balancing will apply if the speech at issue does not implicate the employee's substantive policy viewpoints or politics. *See Barker*, 215 F.3d at 1139.[4] It is therefore necessary to examine each of the claimed acts of political affiliation, to determine whether they are more appropriately analyzed under a free-speech approach rather than a political-affiliation approach.

The first example of Plaintiff's political acts was actually a refusal to act--Plaintiff refused to participate in a petition drive designed to encourage the New Mexico Attorney General to investigate voter fraud in Rio Arriba County. There is a suggestion in the record before the Court that this petition drive implicated Plaintiff's political-affiliation rights, as the petition drive may have been directed at punishing people who were not part of the governing faction in the County, led by Defendants Montoya, Morales, and Valdez. It is also apparent, however, that the refusal to participate in an allegedly politically-motivated campaign is an act of speech, just as much as participating in such a campaign is. Furthermore, there is no evidence that the petition campaign had anything to do with the County's substantive policies, or with Plaintiff's job. Therefore, at least at this point, it appears the *Pickering* balancing test is the appropriate test. Since Defendants have made

---

[4]It is somewhat difficult to decide what the *Barker* court meant in saying the employee's speech must not implicate the employee's politics, since in *Jantzen* the employee's candidacy for office, which would seem to have clearly implicated the employee's politics, was still analyzed under the *Pickering* balancing test rather than the policymaker termination-at-will doctrine. In the remainder of this opinion, the Court will follow the direct holding of *Jantzen* rather than try to harmonize that holding with the *Barker* statement.

no effort to show that Plaintiff's refusal to participate in the petition campaign caused disruption of his duties or in the County offices, summary judgment should not be granted on this issue.

The second claimed political-affiliation act is, under *Jantzen*, actually an act of political speech. That act was Plaintiff's candidacy for precinct chair, in opposition to Defendant Montoya. According to *Jantzen* the proper test to apply to this act is the *Pickering* analysis. Again, summary judgment cannot be granted under this test. There is no showing that the precinct election had anything to do with Plaintiff's job. Defendant Montoya was not Plaintiff's direct supervisor; instead, the County Manager, Defendant Valdez, was. Defendants made no effort to present evidence that Plaintiff's candidacy disrupted the workplace in any way, relying instead on the mere fact that Plaintiff is a policymaking employee. The Court cannot say, therefore, as a matter of law, that the County's interests outweighed Plaintiff's free-speech right to be a candidate for precinct chair.

The final act of political affiliation is another candidacy by Plaintiff, for a seat on the County Commission. Again, under *Jantzen*, this was actually an act of free speech rather than political affiliation. This act comes the closest to being, as a matter of law, an automatic justification for terminating Plaintiff, as a policymaking employee. There are a number of cases upholding a superior's right to fire an employee who declares his or her candidacy for the superior's office. However, according to *Jantzen*, such a bright line approach is not appropriate. Instead, the *Pickering* balancing must be applied and there must be some evidence that the inferior employee's candidacy will cause disruption in the office. Again, no such evidence was presented at this point in this case. It may be noteworthy that the County Commission was not Plaintiff's direct supervisor, lessening the chances that his candidacy would disrupt the operations of the County bureaucracy. Given the lack of evidence of such potential disruption, summary judgment will not be granted on this issue either.

13

Although summary judgment is not appropriate on the merits of the claims identified as political affiliation claims, it is obvious the law in this area was not clearly established at the time Plaintiff was fired from his job. Defendants could not be expected to know, prior to *Jantzen*, that Plaintiff's political activity, including becoming a candidate for office, should actually be considered under the rubric of free speech rather than political affiliation. *See McEvoy, supra* (discussing difficulties courts have had in attempting to analyze cases in which political affiliation and acts in furtherance of that affiliation are combined). Furthermore, as discussed above, even if Defendants had thought of Plaintiff's actions as speech, there was no clearly established law indicating the *Elrod/Branti* policymaker exception did not apply to those actions. For these reasons, the Court will grant qualified immunity to the individual Defendants on the claims identified by the parties as political affiliation claims.

In sum, as a policymaking employee, Plaintiff could have been fired simply for not belonging to the governing faction in Rio Arriba County. However, he has claimed he was fired for acts of political speech, triggering the *Pickering* balancing test. The only evidence presented by Defendants concerning disruption at the office was related to other alleged acts committed by Plaintiff, not his acts of political speech. For that reason, the *Pickering* test does not, as a matter of law, preclude a finding that Plaintiff's First Amendment rights were violated if he was indeed fired for engaging in these political acts. Summary judgment will therefore be denied as to the claimed acts of political affiliation, which are actually acts of political speech. Qualified immunity, however, will be granted to the individual Defendants as to those claims.

**Conclusion**

Defendants have presented much evidence in this case indicating that Plaintiff was a disruptive employee who did not adequately perform his job, and that he was fired for these reasons. Defendants have also presented evidence establishing that Plaintiff was in a policymaking position, a significant factor for purposes of the *Pickering* balancing test.  However, Plaintiff has presented evidence that his job performance was not a problem, and that he was fired because he publicly raised concerns about cronyism and favoritism in County government and engaged in acts of political speech.  The fact that Plaintiff was in a policymaking position does not, as discussed above, insulate Defendants from liability if Plaintiff's allegations are proven.  Given the substantial number and nature of disputed facts in this case, the Court will deny Defendants' motions for summary judgment, except to the extent of granting qualified immunity to the individual Defendants.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Doc. 37) be, and hereby is, GRANTED in part and DENIED in part; and Defendants' other motions for summary judgment (Docs. 46 and 50) be, and hereby are, DENIED.

Dated this 6th day of December, 2000.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Mark E. Komer
Herrera, Long, Pound & Komer, P.A.
P.O. Box 5098
Santa Fe, New Mexico 87502

**For Defendants Valdez, Montoya, and Morales Individually**:
Richard Rosenstock
P.O. Box 10230
Santa Fe, New Mexico 87504

**For All Defendants:**
Galen Reimer
500 Marquette NW, #720
Albuquerque, New Mexico 87102